UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

| | | |
|---|---|---|
| PRIMROSE RETIREMENT COMMUNITIES LLC, a South Dakota limited liability company, | : | No. 6:19-CV-103 |
| Plaintiff, | : | |
| v. | : | |
| ALDEN TORCH FINANCIAL, LLC, a Delaware limited liability company; ALDEN PACIFIC ASSET MANAGEMENT, LLC, a Delaware limited liability company; GOOD HARBOR MANAGEMENT, LLC, a Delaware limited liability company; and PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, a Delaware limited liability company. | : : : : | **COMPLAINT JURY TRIAL DEMANDED** |
| Defendants. | : | |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Primrose Retirement Communities, LLC ("Primrose"), for its Complaint against the Defendants Alden Torch Financial, LLC ("Alden Torch"), Alden Pacific Asset Management, LLC ("Alden Pacific"), Good Harbor Management, LLC ("Good Harbor"), and Pinnacle Property Management Services, LLC ("Pinnacle"), states and alleges as follows:

**THE PARTIES**

1.     Plaintiff, Primrose, is a limited liability company organized and existing under the laws of South Dakota, with its principal place of business in Aberdeen, South Dakota.  Since at least as early as 1991, Primrose, and its predecessor, Primrose, Inc., have provided senior independent living and other related services under the service mark "PRIMROSE."

CIV.
Complaint

2.      Defendant Good Harbor is a limited liability company organized under the laws
of the state of Delaware, with its principal place of business in Denver, Colorado.  Upon
information and belief, Good Harbor, with assistance and direction of Defendants Alden Torch
and Alden Pacific, manages senior housing entities in the State of Texas that are owned by
Defendant Alden Torch (the "Alden Torch Texas Entities"), and which use trademarks that are
comprised of and/or are confusingly similar to Primrose's "Primrose" Mark, including "Primrose
at Shadow Creek;" "Primrose Oaks"; "Potter House at Primrose"; "Primrose at Sequoia Park";
"Primrose at Rolling Hills"; "Primrose at Del Sol" and "Primrose at Heritage Park" (collectively,
the "Infringing Good Harbor Primrose Marks"); in marketing and providing senior apartment
living services throughout Texas and the United States.  Good Harbor manages at least four
properties in this District located in Denton, Denton County, Texas, including the "Primrose at
Sequoia Park" property, located at 1400 East University Drive, Denton, Denton County, Texas
76209, and therefore is subject to the jurisdiction of this Court.

3.      Defendant Alden Torch is a limited liability company organized under the laws of
the state of Delaware, with its principal place of business in Denver Colorado.  Upon information
and belief, Alden Torch either owns or controls entities in the State of Texas that use the
Infringing Good Harbor Primrose Marks in marketing and providing senior apartment living
services throughout Texas and the United States, including the Alden Torch Texas Entities, at
least one of which ("Primrose at Sequoia Park") is located in this District at 1400 East University
Drive, Denton, Denton County, Texas 76209.  Alden Torch also owns websites that employ and
promote some of the Infringing Good Harbor Primrose Marks.  Alden Torch is therefore is
subject to the jurisdiction of this Court.

CIV.
Complaint

4.     Defendant Alden Pacific is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Denver, Colorado.  Upon information and belief, Alden Pacific is a management company through which Alden Torch either owns or controls entities in the State of Texas that use the Infringing Good Harbor Primrose Marks in marketing and providing senior apartment living services, including Good Harbor Management, and the Alden Torch Texas Entities, at least one of which ("Primrose at Sequoia Park") is located in this District at 1400 East University Drive, Denton, Denton County, Texas 76209, and therefore is subject to the jurisdiction of this Court.

5.     Upon information and belief, Good Harbor, Alden Torch, and Alden Pacific, actively, directly, and collectively control or direct the actions of the Alden Torch Texas Entities, at least one of which ("Primrose at Sequoia Park") is located in this District at 1400 East University Drive, Denton, Denton County, Texas 76209, including directing them to use the Infringing Good Harbor Primrose Marks identified above in conjunction with providing and promoting senior living services throughout Texas and the United States.

6.     Defendant Pinnacle is a Delaware limited liability company with a principal place of business of Addison-Dallas, Texas, that also owns and manages many properties in the District.  Specifically, Pinnacle owns and manages at least five properties located in McKinney, Collin County, Texas, including one at 2700 North Brook Drive; a property in The Colony, Denton County, Texas at 6740 Davidson Street; a property in Frisco, Collin County, Texas located at 9600 Gaylord Parkway; a property in Denton, Denton County, Texas located at 113 Coronado Drive; at least two properties located in Lewisville, Denton County, Texas including one located at 247 East Southwest Parkway; at least four properties located in Plano,

{03306348.1}                                          3

CIV.
Complaint

Denton/Collin County, Texas, including one located at 3001 Communications Parkway; and a

property in Carrollton, Denton County, Texas at 3560 Country Square Drive.  Upon information

and belief, Pinnacle also owns and operates senior housing entities in the State of Texas that use

trademarks that are comprised of and/or are confusingly similar to Primrose's "Primrose" Mark,

including "Primrose at Park Villas;" "Primrose at Highland Meadows"; "Primrose at Park

Place"; "Primrose Casa Bella"; "Primrose of Pasadena"; "Primrose at Monticello Park" and

"Primrose at Mission Hills" (the "Infringing Pinnacle Primrose Marks"); in marketing and

providing senior apartment living services throughout Texas and the United States, and therefore

is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

7.      This is a civil action for trademark infringement in interstate commerce, arising

under the laws of the United States, in particular, the Lanham Act, codified at 15 U.S.C. §§ 1114

and 1125.  This Court has jurisdiction over this claim under 28 U.S.C. § 1338(a) and 15 U.S.C. §

1121.

8.      This is also a civil action for unfair competition in violation of Primrose's rights

and other state law claims arising from the same operative facts joined with substantially related

claims under the Lanham Act.  This Court has jurisdiction over these claims under 28 U.S.C. §

1338(b) or 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over the Defendants because they

substantially and continuously transact business in Texas, including in this District; because they

have committed acts resulting in the accrual of a tort in Texas, including in this District; and

{03306348.1}                                    4

CIV.
Complaint

because subjecting them to the jurisdiction of Texas and this District is not inconsistent with the federal law of Due Process.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and/or (2), because at least one of the Defendants physically resides in this District for purposes of venue, and because all of the Defendants reside in the State of Texas for purposes of venue; and because a substantial part of the events or omissions giving rise to Primrose's claims occurred in this District.

## THE FACTS

### Primrose's Registered Word and Design Marks

11.     Primrose and its predecessor, Primrose, Inc., have continuously, and since at least as early as May 1991, used the Standard Character Mark "Primrose" (the "Word Mark") in advertising and otherwise promoting its independent and assisted living services for seniors and provided said services in interstate commerce since at least as early as 1994, with great success and consumer recognition.

12.     The Word Mark is registered with the United States Patent and Trademark Office for "Providing congregate, independent, and assisted living facilities" in class 43 (Registration No. 2,711,268); and for "Providing facilities for the care of Alzheimer's, dementia, and memory care patients" in class 43 (Registration No. 5,311,741).  True and correct copies of Primrose's Word Mark Registrations are attached as Exhibits A and B.

13.     Primrose also had registered the composite mark "Primrose 'A New Choice in Retirement Living'" with the United States Patent and Trademark Office for "Franchising; namely, offering technical assistance in the establishment and/or operation of retirements homes"

CIV.
Complaint

in Class 35; and for "Retirement Homes" in class 42 (Registration No. 1728029) from October 27, 1992 until May 3, 1999.  A true and correct copy of this cancelled registration is attached as Exhibit C.

14.     Primrose has continuously, since at least as early as June 2003, used the Design Mark shown here (the "Design Mark") in advertising and otherwise promoting its independent and assisted living services for seniors in interstate commerce with great success and consumer recognition:



15.     The Design Mark is registered with the United States Patent and Trademark Office for "Providing congregate, independent, and assisted living facilities" in class 43 (Registration No. 3,054,010); and for "Providing facilities for the care of Alzheimer's, dementia, and memory care patients" in class 43 (Registration No. 5,311,740).  True and correct copies of Primrose's Design Mark Registrations are attached as Exhibits D and E.

16.     Primrose often uses both the Word Mark and Design Mark together in its advertising and promotion of its services as depicted here:

CIV.
Complaint



17.     Primrose manages retirement facilities, including senior assisted and independent living facilities and memory care units, throughout the country.

18.     Primrose opened its first retirement community in Aberdeen, South Dakota, in 1989, and first used the Word Mark there at least as early as May 1991.

19.     In 1994, Primrose expanded to Bismarck, North Dakota, and has since expanded to Rapid City and Sioux Falls, South Dakota; Austin, Duluth, and Mankato, Minnesota; Casper, Cheyenne, and Gillette, Wyoming; Grand Island, Nebraska; Marion, Zanesville, Mansfield, Lima, Lancaster, and Findlay, Ohio; Billings, Montana; Wasilla, Alaska; Pueblo, Colorado; Decatur, Illinois; Anderson, Kokomo, Mishawaka, and Newburgh, Indiana; Council Bluffs, Iowa; Kansas City and Jefferson City, Missouri; Shawnee and Stillwater, Oklahoma; Rogers, Arkansas; and Appleton, Racine, and Wausau, Wisconsin.  (*Id.*)  Primrose also has a facility under construction in Midland, Michigan; and has a total of 34 facilities (including the one under construction) in 17 states, and advertises in all 50 states through the internet and other channels of trade.

CIV.
Complaint

20.     Primrose will soon sign construction contracts and loan documents for, and has otherwise made substantial and significant preparations regarding, construction of a senior independent and assisted living facility in the District in Tyler, Texas, which will also be marketed using the Word Mark and Design Mark.  Primrose has obtained approvals from the City of Tyler and the State of Texas regarding Primrose's construction plans; and has conducted significant market and demographic studies regarding the Tyler market in preparing for the project.  Construction on Primrose's Tyler, Texas location is expected to begin in April 2019, and the commencement of pre-construction marketing is even more imminent.  Consequently, there is a genuine controversy regarding the parties' respective rights in the Word and Design Mark in this District and otherwise.

21.     Primrose is well-known within the senior independent and assisted living facility market, and is well-regarded among those who seek its services.  Because of its high-quality services, reputation, and marketing and promotional efforts, Primrose's annual gross revenues are now approaching $125,000,000, and it has over 1,500 employees and over 2,500 residents at its facilities.

22.     Primrose invests considerable resources in its marketing efforts and has advertised in numerous forms of media, including newspapers, magazines, television, radio, internet, and other outdoor signage using the Word and Design Marks.

23.     Primrose has a Twitter feed and advertises on numerous websites using the Word and Design Marks.

24.     Primrose and its Word and Design Marks are also listed on a myriad of third-party websites discussing, ranking, rating, or otherwise promoting retirement communities.

CIV.
Complaint

25.     Because of the name-recognition Primrose has established in the Word Mark and Design Mark, Primrose's website receives thousands of new visitors every month.  Internet search terms that include some variation on the word "Primrose" are consistently among the most-common search terms that result in a person visiting Primrose's website.  In particular, the phrases "primrose," "primrose retirement community," "primrose retirement communities" and "primrose assisted living" are typically among the most-common phrases used by internet users to reach Primrose's website.

26.     Due to its long-time and continuous use of the Word Mark and Design Mark in conjunction with the provision and marketing of Primrose's services throughout the country, the Primrose's Word Mark and Design Mark have come to be recognized as an indication of the source and quality of Primrose's services.

**Good Harbor Management's Infringing Primrose Marks**

27.     Good Harbor holds itself out on its website at www.goodharbormgmt.com as providing property management services for multi-family properties as "an affiliate" of Defendant Alden Torch, and through a "Company Services Agreement" with Defendant Alden Pacific, whereby Alden Pacific provides accounting, human resources, and legal services to Good Harbor Management.

28.     Good Harbor Management holds itself out as the owner or operator of numerous senior housing facilities in Texas, Georgia, and Florida, including the seven Texas locations "Primrose of Shadow Creek" in Austin; "Potters House at Primrose" and "Primrose Oaks" in Dallas; "Primrose Sequoia Park" in Denton (located in this District); "Primrose Park at Rolling Hills" in DeSoto; and "Primrose at Del Sol" and "Primrose at Heritage Park" in Houston, as

{03306348.1}                                    9

CIV.
Complaint

reflected on Good Harbor Management's website at

http://goodharbormgmt.com/communities/#TX.

29.     Good Harbor's website, which includes links to websites for these seven Texas

"Primrose" locations, is, upon information and belief, owned and/or controlled directly by Alden

Torch, because the listed registrant for Good Harbor's website is Jill Brooks-Garnett, who is held

out as Alden Torch's CEO on Alden Torch's website at https://aldentorch.com/leadership.htm.

30.     The Alden Torch Texas Entities are not publicly listed as "owners" or "operators"

of the senior housing facilities listed in paragraph 28, but appear to be the owners of the real

estate on which those facilities are located, or the owners of facilities themselves, or both.  Upon

information and belief, Alden Torch owns and controls these entities; and Good Harbor

Management and Alden Pacific all directly or indirectly participate in the management or control

of these entities.

31.     Each of these seven "Primrose" facilities is a senior living facility and/or senior

apartment facility and is marketed toward the same class of potential consumers that Primrose

serves, i.e., seniors aged 55 and older, in the same channels of trade, including on the Worldwide

Web.

32.     Good Harbor Management advertises "Primrose of Shadow Creek" as a senior

living apartment community at the website http://primroseofshadowcreek.com/.  This website is

linked on Good Harbor's webpage.  Good Harbor Management also uses the following logo on

this website and in other promotions to promote Primrose of Shadow Creek:

CIV.
Complaint



33.     Good Harbor Management advertises "Potters House at Primrose" as a residence

for "Independent Seniors" who are 55 years of age or older at the website

http://pottershouseatprimrose.com/.  This website is linked on Good Harbor's webpage.  Good

Harbor Management also uses the following logo on this website and otherwise to promote

Potters House at Primrose:



34.     Good Harbor Management advertises Primrose Oaks as a "luxury, yet affordable

independent senior community" at the website http://primroseoaks.com/.  This website is linked

on Good Harbor's webpage.  Good Harbor Management also uses the following logo on this

website and otherwise to promote Primrose Oaks:

CIV.
Complaint



35.      Good Harbor Management advertises Primrose at Sequoia Park (located in this District) as an "active senior community" at the website http://primroseatsequoiapark.com/.  This website is linked on Good Harbor's webpage.  Good Harbor Management also uses the following logo at this website and otherwise to promote Primrose at Sequoia Park:



36.      Good Harbor Management advertises Primrose Park at Rolling Hills as an "affordable senior apartment community" at the website http://primroseparkatrollinghills.com/. This website is linked on Good Harbor's webpage.  Good Harbor Management also uses the following logo on the website and otherwise to promote Primrose Park at Rolling Hills:

CIV.
Complaint



37.     Good Harbor Management advertises Primrose Del Sol as "a beautiful community

designed and developed for independent seniors 55 and better" at the website

http://delsolseniorliving.com/.  This website is linked on Good Harbor's webpage.  Good Harbor

Management also uses the following logo on the website and otherwise to promote Primrose Del

Sol:



38.     Good Harbor Management advertises Primrose at Heritage Park as exemplifying

its "commitment to living in excellence for those seniors over 55" at the website

http://primroseatheritagepark.com/.  This website is linked on Good Harbor's webpage.  Good

Harbor Management also uses the following logo on the website and otherwise to promote

Primrose at Heritage Park:

CIV.
Complaint



39.     Good Harbor also advertises these seven senior living locations on a number of national websites directed toward consumers seeking those types of residences such as www.after55.com, www.apartmentfinder.com, and www.abodo.com using the Word Mark.

40.     There are also Facebook pages promoting several of these locations including https://www.facebook.com/pages/Primrose-of-Shadow-Creek/140076479952445, https://www.facebook.com/pages/biz/Primrose-Oaks-585035971545626/, and https://www.facebook.com/PrimroseAtSequioaPark/?rf=501853053294439 featuring some of the Infringing Good Harbor Primrose Marks.

41.     As noted regarding the Infringing Good Harbor Primrose Mark logos above, and as shown below in signage, Good Harbor typically presents the Infringing Good Harbor Primrose Marks so the word "Primrose" is in larger or more distinctive font than the other words, and the "flower" forms a prominent portion of the logo:



CIV.
Complaint

Primrose of Shadow Creek                    Potter's House at Primrose



Primrose Oaks                               Primrose at Sequoia Park



Primrose Park at Rolling Hills              Primrose at Del Sol



                                            Primrose at Heritage Park

CIV.
Complaint

42.     Which is confusingly similar to Primrose's use of its Word and Design Marks,

below:



43.     Information regarding the "Primrose at Shadow Creek" facility, including use of

the "flower" logo described above, is also found at Alden Torch's website, including at the web

addresses http://wordpress-base.aldentorch.com/income-limits/, http://wordpress-

base.aldentorch.com/eligi/, and http://wordpress-base.aldentorch.com/photos/.  These pages

appear to be templates Alden Torch has created to be used by Good Harbor Management on the

Good Harbor Management websites identified in paragraphs 36 through 42, above, thereby

indicating that Alden Torch is actively involved in the use of the Infringing Good Harbor

Infringing Marks in promoting senior living facilities managed by Good Harbor.

44.     In addition, Alden Torch is, upon information and belief, the owner of at least two

of the Good Harbor websites identified above, specifically delsolseniorliving.com and

primroseatheritagepark.com, because Karl Bundy, Alden Torch's Director of IT, is listed as the

CIV.
Complaint

registrant of those domains, and Alden Torch's address in Denver is listed as the registrant's

address for those domains.

45.     Pinnacle is, upon information and belief, the owner of the other five Good Harbor

websites identified above, because John Pinnacle of Pinnacle Property Management Services is

listed as the registrant of four of those domains, and because Pinnacle's address in Addison-

Dallas Texas is listed as the registrant's address for those five domains, thereby indicating that

Pinnacle is actively involved in the use of the Infringing Good Harbor Primrose Marks at those

website as well.

### Pinnacle's Infringing Primrose Marks

46.     In addition to owning five of the "Good Harbor" domains, Pinnacle advertises

Primrose at Park Villas as "an affordable apartment community designed specifically for

independent adults 55+"" at the website www.primroseatparkvillas.com.  This website is owned

by Pinnacle.  Pinnacle also uses the following logo on its website and otherwise to promote

Primrose at Park Villas:



47.     Pinnacle advertises Primrose at Highland Meadows as "affordable active senior

living lifestyle" at the website https://www.primroseathighlandmeadows.com.  This website is

CIV.
Complaint

owned by Pinnacle.  Pinnacle also uses the following logo on its website and otherwise to promote Primrose at Highland Meadows:



48.      Pinnacle advertises Primrose at Park Place as "a new style of luxury senior living" at the website https://www.primroseatparkplace.com.  This website is owned by Pinnacle.  Pinnacle also uses the following logo on its website and otherwise to promote Primrose at Park Place:



49.      Pinnacle advertises Primrose Casa Bella by noting that the apartments at Primrose Casa Bella "must have at least one occupant who is 55 years of age or older" at the website https://www.primrosecasabella.com.  This website is owned by Pinnacle.  Pinnacle also uses the following logo on its website and otherwise to promote Primrose Casa Bella:

CIV.
Complaint



50.     Pinnacle advertises Primrose of Pasadena by noting that the apartments at Primrose of Pasadena "must have at least one occupant who is 55 years of age or older" at the website https://www.primroseofpasadena.com.  This website is owned by Pinnacle.  Pinnacle also uses the following logo on its website and otherwise to promote Primrose at Pasadena:



51.     Pinnacle advertises Primrose at Monticello Park as creating "the perfect setting for active senior living" at the website https://www.primroseatmonticellopark.com.  This website is owned by Pinnacle.  Pinnacle also uses the following logo on its website and otherwise to promote Primrose at Monticello Park:

CIV.
Complaint



52.      Pinnacle advertises Primrose at Mission Hills as "an active community designed specifically for independent adults 55 and better" at the website https://www.primroseatmissionhills.com.  This website is owned by Pinnacle.  Pinnacle also uses the following logo on its website and otherwise to promote Primrose at Mission Hills:



53.      Pinnacle also advertises these seven senior living locations on a number of national websites directed toward consumers seeking those types of residences such as www.after55.com, www.apartmentfinder.com, and www.abodo.com using the Word Mark.

54.      There are also Facebook pages promoting several of these locations including https://www.facebook.com/pages/category/Real-Estate/Primrose-at-Highland-Meadows-1707763209502713/,  https://www.facebook.com/pages/category/Real-Estate/Primrose-at-Park-Place-107136379692539/, https://www.facebook.com/Primrose-Casa-Bella-168464256501397/,

CIV.
Complaint

https://www.facebook.com/primrose.pasadena, https://www.facebook.com/pages/Primrose-At-Mission-Hills/164478113578896, featuring some of the Infringing Pinnacle Primrose Marks.

55.    As noted regarding the Infringing Pinnacle Primrose Mark logos above, and as shown below in signage, Pinnacle presents the Infringing Pinnacle Primrose Marks so the word "Primrose" is in larger or more distinctive font than the other words, and the "flower" forms a prominent portion of the logo:





Primrose of Park Villas                    Primrose at Highland Meadows





Primrose at Park Place                    Primrose Casa Bella

CIV.
Complaint

 

Primrose of Pasadena                         Primrose at Monticello Park



Primrose at Mission Hills

56.     Which is confusingly similar to Primrose's use of its Word and Design Marks,

below:



CIV.
Complaint

**The Connection between Pinnacle and Good Harbor**

57.     As reflected in the allegations above, the logos for the seven Infringing Good Harbor Primrose Marks and the seven Infringing Pinnacle Primrose Marks (collectively, the "Infringing Primrose Marks") all have nearly identical fonts, and identical means of presenting the "flower" that is confusingly similar to the Design Mark; the word "Primrose" which is identical to the Word Mark; and the merely-descriptive phrase below "Primrose" identifying a location.

58.     Upon information and belief, Pinnacle and Good Harbor are ultimately owned and controlled by the same parent company, which is why Pinnacle's and Good Harbor's use of the Infringing Primrose Marks is identical.

59.     Because of their common parent ownership, Pinnacle, Good Harbor Management, Alden Torch, and Alden Pacific are doing business and advertising and promoting senior living facility services in interstate commerce, including in the State of Texas, and this District.  These Defendants all use the Infringing Primrose Marks, which are confusingly similar to Primrose's Word and Design Marks, and which are likely to cause confusion among consumers and potential consumers regarding the source or sponsorship of the parties' respective services, to trade on the long-standing reputation Primrose has built in the Word Mark and Design Mark.

**The Risk of Confusion and the Harm and Confusion that has Already Occurred**

60.     Actual consumer confusion is occurring as a result of the Defendants' use of the Infringing Primrose Marks.

61.     For instance, Primrose has been contacted by the daughter of a resident at Primrose Oaks expressing frustration that she and her mother were unable to reach someone at

CIV.
Complaint

the corporate office of Primrose Oaks, indicating the resident's daughter believed Primrose was affiliated with Primrose Oaks, or vice versa.  Likewise, an agent with a Real Estate Investment Trust recently contacted Primrose's main office inquiring whether the Primrose Oaks facility was affiliated with Primrose.

62.     Primrose believes that the likelihood of confusion and actual instances of confusion will increase as it markets its own services more directly in Texas, which, because of the imminent construction of a facility in the District, is about to begin.

63.     Moreover, the parties' respective marks are used in the same channels of trade, regarding the same services, and are presented to the same potential consumers.

64.     Primrose is concerned that this likelihood of confusion will result in harm to Primrose's valuable Marks and brand, because in the most-recent years, there have been many publicly-reported incidents, which reflect poorly on the various Good Harbor and Pinnacle "Primrose" locations such as those detailed at https://www.austinchronicle.com/news/2018-07-06/primrose-residents-face-mold-broken-ac-and-security-issues/; and https://www.dentonrc.com/news/residents-at-senior-living-center-without-promised-transportation/article_92ebb136-acba-55a2-b3e8-c348f74905d1.html.

**The Defendants and/or their Predecessors Have Long Known of Primrose's Rights**

65.     Upon information and belief, the Defendants' use of each of the Infringing Primrose Marks (in conjunction with the provision and promotion of senior living facility services) did not begin until after the Defendants or their predecessors were aware of Primrose's use of its Word and Design Marks (in providing and promoting the same services), and after

CIV.
Complaint

Primrose's Word and Design Marks were registered for those services on the Principal Register with the USPTO.

66.     For example, in 2004, one of the Defendants' predecessors, SWH Holdings, Inc. ("SWH"), which eventually conveyed its rights and interests to Pinnacle, attempted to register the following composite mark with the USPTO for "construction and management of rental apartments for low-income seniors":



67.     SWH was denied registration in light of other registrations and applications demonstrating superior priority, including Primrose's applications and registrations related to the "Primrose" name.  SWH abandoned its efforts to register the mark, above, in January 2006.

68.     In 2003, SWH also attempted to register the following composite mark with the USPTO for "apartment homes for seniors":



CIV.
Complaint

69.     SWH was again denied registration of this mark for those particular services in light of other registrations and applications demonstrating priority, including Primrose's applications and registrations related to the "Primrose" name.  SWH abandoned its efforts to register the mark, above, in September 2003.

70.     Accordingly, Defendants' predecessors were well aware of Primrose's trademark rights, including its priority in the "Primrose" name in conjunction with the promotion and provision of senior living services.

71.     Primrose has also, since SWH's attempts to register marks comprising "Primrose" on the principal register of the USPTO, sent communications to Defendants and Defendants' predecessors, including SWH and Pinnacle, and to the "Primrose of Shadow Creek" location, making Defendants' predecessors and Defendants aware of Primrose's superior rights in the "Primrose" name in conjunction with the provision and promotion of senior living services.

72.     Despite being repeatedly advised of Primrose's superior rights in the Word Mark and Design Mark, the Defendants and their predecessors have made and continue to make use of confusingly similar Infringing Primrose Marks.

## COUNT 1
## INFRINGEMENT UNDER 15 U.S.C. § 1114(a) (SECTION 32 OF THE LANHAM ACT)
## (AGAINST ALL DEFENDANTS)

73.     Primrose restates all previous allegations and hereby incorporates them by reference.

74.     Primrose's Word Mark and Design Mark are registered on the Principal Register, and its registrations attached as Exhibits A and D are now incontestable under 15 U.S.C. § 1065.

CIV.
Complaint

75.     Primrose has spent large sums of money in advertising and otherwise promoting

its services in interstate commerce and has prominently featured the Word Mark and Design

Mark in its promotional activities and provision of senior living facilities.

76.     Primrose has built-up and now has valuable goodwill connected with its business

of providing senior living facilities, and this goodwill is symbolized by the Word Mark and

Design Mark.

77.     Long after the adoption, registration, and widespread use of the Word Mark and

Design Mark by Primrose, the Defendants and their predecessors began to advertise and continue

to advertise and perform senior living services in interstate commerce, in the same channels of

trade as Primrose, and with regard to the same potential consumers as Primrose, using the

Infringing Primrose Marks with the intent to cause confusion and mistake and with the intent to

deceive, as well as the intent to trade upon Primrose's superior reputation in the senior living

services market.

78.     Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114), use in commerce of any

copy or colorable imitation of a registered mark in connection with any goods or services which

is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or

approval of his or her goods/services triggers liability for trademark infringement by the

registrant.

79.     The Defendants' use of the Infringing Primrose Marks in this District and

otherwise has created not only a "likelihood of confusion," but has in fact resulted in actual

confusion.

CIV.
Complaint

80.     Primrose has previously advised the Defendants and their predecessors of its superior rights in the Word Mark and Design Mark, but the Defendants have not ceased use of the Infringing Primrose Marks.

81.     The Defendants' infringement of Primrose's registered Word Mark and Design Marks is causing irreparable harm to Primrose's business and goodwill and will continue to cause such irreparable harm if not enjoined.

82.     The Defendants' infringement of Primrose's registered marks has caused damages to Primrose in terms of lost profits, diversion of sales, and loss of goodwill.

83.     The Defendants' infringement of Primrose's registered marks has resulted in benefits inuring to the Defendants that would not have been realized but for the infringement.

84.     This is an exceptional case as defined by the Lanham Act.  The Defendants purposely chose to use the Infringing Primrose Marks to capitalize on the success of Primrose, and to confuse the public into believing that Defendants are associated with Primrose, or confuse the public that Defendants in fact are Primrose, entitling Primrose to multiple damages and attorney's fees.

## COUNT 2
## INFRINGEMENT UNDER 15 U.S.C. § 1125(a) (SECTION 43 OF THE LANHAM ACT) (AGAINST ALL DEFENDANTS)

85.     Primrose restates all previous allegations and hereby incorporates them by reference.

86.     Primrose has spent large sums of money in advertising and otherwise promoting its services and has prominently featured the Word and Design Marks in promotional activities.

CIV.
Complaint

87.     Primrose has built-up and now has valuable goodwill connected with its business and this goodwill is symbolized by the Word and Design Marks.

88.     Long after the adoption and widespread use of the Word and Design Marks by Primrose, Defendants began and continue to advertise and perform senior living services in interstate commerce in the same channels of trade as Primrose, and with regard to the same potential consumers as Primrose, using the Infringing Primrose Marks with the intent to cause confusion and mistake and intent to deceive, as well as the intent to trade upon Primrose's superior reputation in the senior living services market.

89.     Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)) any person who in connection with any goods or services, uses in commerce any word, term, name, or any combination thereof which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person as to the origin, sponsorship, or approval of his or her goods/services or commercial activity by another person, or who uses said word, term, name etc. in commercial advertising, which misrepresents the nature, characteristics or qualities of his or her services shall be liable in a civil action by any person who believes he or she is likely to be damaged by such act.

90.     Defendants' conduct of business, including business in this District, in conjunction with the Infringing Primrose Marks, has created not only a "likelihood of confusion," but has in fact resulted in actual confusion.

91.     Primrose has repeatedly advised the Defendants and their predecessors of Primrose's superior trademark rights, but the Defendants continue to use the Infringing Primrose Marks.

CIV.
Complaint

92.     The infringement of Primrose's Marks is causing irreparable harm to Primrose's business and goodwill and will continue to cause such irreparable harm if not enjoined.

93.     The infringement of Primrose's Marks has caused damages to Primrose in terms of lost profits, diversion of sales, and loss of goodwill.

94.     Defendants' infringement of Primrose's Marks has resulted in benefits inuring to Defendants that would not have been realized but for Defendants' infringement.

95.     This is an exceptional case as defined by the Lanham Act.  Defendants purposely chose to use the Infringing Primrose Marks to capitalize on the success of Primrose's business, and to confuse the public into believing that Defendants are associated with Primrose, or confuse the public that Defendants in fact are Primrose, entitling Primrose to multiple damages and attorney's fees.

**COUNT 3**
**INDIRECT (CONTRIBUTORY OR VICARIOUS) TRADEMARK INFRINGEMENT**
**(AGAINST ALDEN TORCH AND ALDEN PACIFIC)**

96.     Primrose restates all previous allegations and incorporates them herein by reference.

97.     To the extent Alden Torch and Alden Pacific are deemed to have not directly infringed Primrose's Word Mark and Design Mark, as otherwise pled herein, each of those entities is subject to liability for indirect contributory and/or vicarious infringement under 15 U.S.C. §§ 1114 and/or 1125.

98.     These defendants are liable for contributory infringement on the basis that each of those entities knew or had reason to know of Good Harbor's and the Alden Torch Texas Entities'

CIV.
Complaint

infringing conduct regarding the Infringing Good Harbor Primrose Marks, and failed to stop the

infringing conduct, but in fact, assisted in, participated in, induced, or directed that conduct.

99.     These defendants are also liable for vicarious infringement, because these entities

are in partnership with one another or exercise joint ownership or control over the infringing

actions of Good Harbor and the Alden Torch Texas Entities.

100.     For example, one of Alden Torch's officers is the registrant of two of the websites

that feature Good Harbor Primrose Marks, and Alden Torch owns and controls the Alden Torch

Texas Entities, demonstrating that Alden Torch has aided in, participated in, or directed Good

Harbor's and the Alden Torch Texas Entities' conduct.

101.     In addition, on Good Harbor's website, Alden Torch and Alden Pacific are held

out as assisting Good Harbor in managing properties including those owned or operated by the

Alden Torch Texas Entities, demonstrating that Alden Torch and Alden Pacific have aided in,

participated in, or directed Good Harbor's and the Alden Torch Texas Entities' conduct.

## COUNT 4
## UNFAIR COMPETITION (AGAINST ALL DEFENDANTS)

102.     Primrose restates all previous allegations and hereby incorporates them by

reference.

103.     Defendants' conduct constitutes unfair competition and wrongful confusion of

source under the Lanham Act and under equivalent provisions of state common law.

104.     Defendants seek to profit by use of the Infringing Primrose Marks, and are

improperly trading upon Primrose's goodwill, which has developed over the course of many

years through great effort, costs, and advertising.

CIV.
Complaint

105.    Defendants' conduct has caused and continues to cause damages to Primrose in terms of lost profits, diversion of sales, and loss of goodwill.

106.    Defendants' unfair competition has resulted in benefits inuring to Defendants which would not have been realized but for Defendants' unfair competition.

107.    Defendants' conduct has been willful, malicious, and in bad faith, particularly given their refusal to cease their conduct despite being notified of Primrose's superior rights, warranting an award of multiple and/or punitive damages in favor of Primrose.

## DEMAND FOR JURY TRIAL

**Plaintiff hereby respectfully demands a trial by jury on all issues so triable.**

## PRAYER

WHEREFORE, Primrose prays for judgment jointly and severally against Defendants as follows:

1.    Granting preliminary and permanent injunctive relief enjoining Defendants from further conduct likely to confuse consumers regarding the source, quality, or characteristics of the parties' respective services, and in particular restraining Defendants from the use of the Word Mark or Design Mark or any confusingly similar variation thereof;

2.    Finding that the Defendants have directly and/or contributorily or vicariously infringed Primrose's Word and Design Marks;

3.    Awarding in favor of Primrose, and against Defendants, jointly and severally, the amount of Primrose's actual damages as well as an accounting of Defendants' profits as a result of their unlawful actions;

CIV.
Complaint

4.     Declaring that, in light of Defendants' actions, this is an exceptional case under the Lanham Act;

5.     Granting all statutory and other damages to which Primrose is entitled, including any presumed or multiple damages as provided by statute or other applicable law;

6.     Awarding attorneys' fees and costs to which Primrose is entitled whether by statute or other applicable law;

7.     Imposing punitive damages in an amount to be determined by a jury for Defendants' willful, malicious conduct, in reckless disregard of Primrose's rights;

8.     Imposing prejudgment interest on all of Primrose's damages as provided by statute or other applicable law; and

9.     Providing such other relief as this Court deems just and equitable.

Dated this 22nd day of March, 2019.

RESPECTFULLY SUBMITTED


By:  */s/ Allen F. Gardner*
Allen F. Gardner (TX SBN 24043679)
ALLEN GARDNER LAW, PLLC
609 S. Fannin Ave.
Tyler, TX 75701
Tel:  (903) 944-7537
Fax: (903) 944-7856
Allen@allengardnerlaw.com

CIV.
Complaint

*Of Counsel* (*pro hac vice* to be filed)
WOODS, FULLER, SHULTZ & SMITH P.C.

Sander J. Morehead
Troy N. Leonard
Tim R. Shattuck
Joel E. Engel III
300 South Phillips Avenue, Suite 300
Post Office Box 5027
Sioux Falls, South Dakota 57117-5027
(605) 336-3890

**ATTORNEYS FOR PLAINTIFF**